# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| ADRIAN WASHINGTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 12-1248-CV-W-GAF-P |
| | ) | |
| LARRY DENNEY, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Adrian Washington, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on October 4, 2012, seeking to challenge his 2007 convictions and sentences for second degree murder and armed criminal action, which were entered in the Circuit Court of Jackson County, Missouri.

The petition raises eleven grounds for relief: (1) that appellate counsel was ineffective; (2) that trial counsel was ineffective in failing to object regarding pre-Miranda questioning; (3) that trial counsel was ineffective for failing to impeach a state witness for inconsistent statements; (4) that petitioner was denied due process and a fair trial under the Sixth and Fourteenth Amendments; (5) that trial counsel was ineffective for failing to adduce expert testimony; (6) that trial counsel was ineffective for failing to investigate and call a certain witness to testify; (7) that trial counsel was ineffective for failing to object to certain jury instructions in the motion for new trial; (8) that appellate counsel was ineffective for failing to submit a "complete brief"; (9) that trial counsel was ineffective for failing to object to the admission of certain exhibits; (10) that trial counsel was ineffective for failing to raise a Brady violation in the motion for new trial; and (11) that the state

failed to adduce sufficient evidence to support a conviction for second degree murder or armed criminal action. Respondent contends that all of petitioner's grounds are procedurally defaulted.

## SUMMARY OF THE FACTS

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

> On the night of April 15, 2005, Brandon Strickland and some of his relatives and friends were gathered at a house in Kansas City for a birthday party for Strickland's cousin, Claudetta Forbes. When the party broke up around 11:00 p.m., the group drove around town in cars driven by Strickland and Forbes and returned to the residence around 3:45 the next morning.
>
> Forbes parked her car in the driveway, and Strickland parked his car in the street. The group sat in the two cars and talked before another car, driven by [petitioner], approached them. [Petitioner] knew Strickland and had previously dated Artina Shanklin, who was in Strickland's car. Shanklin recognized [petitioner] as he drove by slowly, and she yelled, "'Stop him!'" When Artina Shanklin's cousin, Teyeka Shanklin, who was also in Strickland's car, opened the door so that she could get [petitioner's] attention, Strickland grabbed her and told her to close the door.
>
> [Petitioner] drove past Strickland's car but, at the next intersection, turned around and drove back towards the group. When [petitioner] pulled up next to Strickland's car, Strickland stood up through the sunroof and looked at [petitioner]. They glared at each other. Artina Shanklin thought [petitioner] had a "crazy" look on his face.
>
> Forbes saw [petitioner] reach down, pull out a gun, and point it at Strickland's car. [Petitioner] fired seven or eight shots before he sped off. Strickland was hit and died at the scene from his gunshot wounds. Later, Forbes, Artina Shanklin, and Teyeka Shanklin identified [petitioner] from a photographic lineup as the driver of the shooter's car. Forbes also identified [petitioner] as the shooter.
>
> Meanwhile, [petitioner] left town and went to Galveston, Texas. He returned to Kansas City a couple of days after the shooting and was arrested on April 25, 2005.
>
> The day of the arrest, [petitioner] spoke to a homicide detective.

The detective's first contact with [petitioner] occurred at 3:55 p.m. From 3:55 to 4:02 p.m., the detective went over the Detective Investigative Report (DIR) with [petitioner]. The DIR collects background information, such as the individual's address, parents' names, and associates' names.

At 4:02 p.m., the detective showed [petitioner] a *Miranda* Waiver Form and asked him to read it out loud while the detective read it along with him. The detective then asked [petitioner] if he understood his rights and wanted to talk to the police. If so, he was to sign the *Miranda* Waiver Form. [Petitioner] indicated that he understood his rights and wanted to talk. He signed the form at 4:04 p.m. and proceeded to answer the detective's questions for the next four and one-half hours.

[Petitioner] told the detective that, at the time of the shooting, he was asleep at another residence and was not present at the crime scene. He said a friend told him about the shooting on the morning of April 16. After learning of Strickland's death, [petitioner] said he drove to Texas with his cousin. He decided to return to Kansas City upon hearing that he was wanted for murder. [Petitioner] told the detective that he thought about turning himself in but then decided to do his own investigation into Strickland's death. When the detective told him witnesses had identified him at the scene as being the shooter, [petitioner] said it was a conspiracy, and he did not know why "they" would say bad things about him. In his statement to the detective, he never indicated he was at the scene at the time of the shooting.

The State charged [petitioner] with one count of first-degree murder and one count of armed criminal action. [Petitioner] filed a pretrial motion to suppress his statement to the detective. The motion alleged that the statement "was not voluntarily given and was in violation of [petitioner's] Miranda rights." The circuit court overruled the motion at a pretrial evidentiary hearing, finding that [petitioner] was advised of rights pursuant to *Miranda*, that he voluntarily, knowingly, and intelligently waived those rights, and that his statement was voluntary.

During the trial, when the homicide detective began to testify about [petitioner's] post-warning statement, [petitioner] objected on grounds of hearsay and lack of foundation. He did not object on the basis that the statement was obtained in violation of *Miranda* or was involuntarily made. In fact, he specifically said that his

> objection was *not* to the voluntariness of the statement. The court overruled the objection, and the detective testified as to the contents of [petitioner's] post-warning statement.
>
> [Petitioner] testified in his defense. He admitted he was present at the time of the shooting. According to [petitioner], he had agreed to give a man named Aaron Hall a ride home. He was high on PCP at the time. While driving to Hall's house, [petitioner] saw Strickland's parked car and recognized Strickland, Artina Shanklin, and Teyeka Shanklin in the car. [Petitioner] said that, after he drove by slowly the first time, he turned the car around so he could drive back by and tell them not to leave because he wanted to talk to Artina Shanklin. When he drove past the second time, [petitioner] saw Strickland looking out the sunroof. [Petitioner] then heard gunshots and saw a gun going off right next to him. As [petitioner] drove away, he heard Hall say, "'Man, F them females.'" [Petitioner] testified he was unaware, before the shooting, that Hall was armed or planned to shoot anyone. He said he lied to the detective because he was scared. The State cross-examined [petitioner] about the numerous discrepancies between the statement he gave the detective and his trial testimony.
>
> The jury found [petitioner] guilty of second-degree murder and armed criminal action. The court sentenced him to concurrent terms of life imprisonment and five years.

(Doc. No. 9, Ex. 7, pp. 2-7).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the

petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## **PROCEDURAL DEFAULT**

Respondent contends that all eleven of petitioner's grounds are procedurally defaulted.

In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

A review of the record shows that, although petitioner presented the claims at issue in his amended Rule 29.15 motion, petitioner did not raise them on appeal from the denial of that motion. Therefore, those claims are procedurally defaulted and may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

Petitioner does not present any valid explanation for why this ground was not pursued on appeal from the denial of his Rule 29.15 motion and, therefore, has failed to demonstrate cause

---

presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

for his procedural default.² As a result, we do not consider prejudice. The Court, however, can still reach the merits of his claims if petitioner can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence. . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995). Petitioner fails to make this showing.

Petitioner has failed to show cause for his default of grounds 1 through 11. He does not show that a manifest injustice will occur if these grounds are not reviewed on the merits, and he has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of grounds 1 through 11 is barred.

Grounds 1 through 11 are denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

---

²The recent holding by the Supreme Court of the United States in Martinez v. Ryan, 132 S. Ct. 1309 (2012) does not apply to petitioner's case because petitioner's grounds were reviewed on the merits by the post-conviction motion court.

# ORDER

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

                                              /s/ Gary A. Fenner  
                                              GARY A. FENNER  
                                              UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:  May 21, 2013.